Would you call the third file case please? Case 11-0240, People v. Lee Murray Kelley. All right. And will the lawyers please identify themselves? You can all sit down. You want to step up to the microphone and do that. The microphone doesn't amplify, it just records. So those who will be participating, please identify yourselves. Mr. Senator Elizabeth Leeb on behalf of Mr. Lee Murray Kelley. And Michael Johnson, 7-Eleven Senior Law Student on behalf of Lee Murray Kelley. Good afternoon, Your Honors. David Iskowich, I-S-K-O-W-I-C-H with the Illinois Attorney General's Office on behalf of Lee Murray Kelley. All right. Thank you. And to our 7-Eleven student, welcome. Pleasure to have you here. And then Ms. Leeb, please proceed. May it please the Court, Your Honors, Elizabeth Leeb on behalf of Mr. Kelley. Now, Your Honors, we have placed, I'm sorry, before I begin, if I may reserve a few minutes for rebuttal. Excuse me? Before we begin, may I reserve a few minutes for rebuttal? Sure. Thank you, Your Honors. Now we've placed three issues before the Court today, but for our purposes I'd like to focus on the first issue. Of course, I am happy to answer any questions the Court may have on the other two. The first issue being that the respondent was denied a fair trial due to the State's improper rebuttal arguments. Let me ask you about that, because as we're reading the record, these sexually violent person cases are a little different from certainly the run-of-the-mill criminal cases where you're trying to prove the action. They're civil in nature. And it really, in this case, did it not turn upon whether the jury accepted or rejected the opinion testimony of the two doctors about their opinions as to what would likely occur in the future should this person, Mr. Kelley, be released into the public? Well, that's what it should be turning on, Your Honor, because that was the only evidence that the jury could consider here. Right. So if that's the case, and if the attack on the opinion testimony of the doctors included an attack on the reliance that they placed on the previous convictions because the convictions were so remote in time, would not the government be entitled to argue that there are other factors beyond those convictions which further support the conclusions of these witnesses? And isn't that really what was occurring there, albeit with some sloppy language? I think that's two issues I would address there. That had that been what occurred, it may have been proper, only if they had been arguing the expert's opinion, the expert's credibility, that the fact that they had relied on certain things made their opinions credible. But that's not what happened here. But isn't that a reaction to, as I read it, the attack on the expert's credibility wasn't really as expressed in its reliance on that these factors affected the weight that should be ascribed to the expert's testimony. Wasn't there a little sloppy language on both sides during the course of the argument? Well, I think, Your Honor, it was an argument on the convictions. When the convictions were, it's proper. The convictions were in evidence. Right, but what, there's really the only evidence, or the only relevance of those convictions, as the instructions correctly pointed out, and repeatedly really, once during the course of the case and once at the conclusion of the case, that really the issue is these shouldn't be considered for any reason other than the reason we're speaking of here. And weren't there instances where both sides were, call it sloppy, call it less literal in how they chose to argue those factors? Weren't there instances when both sides really failed to expressly state you should only consider it for these reasons? Well, in the case where the state's argument is based on what he did, we're talking about arguing things that happened for the jury to consider. So their phrasing is important, Your Honor, and I don't think their phrasing is comparable to the respondent's arguments. Here we have the state says some form of either that's what he did or what he does or that's what happens. But isn't that what he did and that's what he does, isn't that related directly to the fact that those were items under Wilson v. Clark that were relied upon by the experts who testified to their conclusions? Isn't that really, aren't we really arguing about what was implicit as opposed to what was explicit in what they said? No, what they said was not to be considered for the truth of the matter asserted, Your Honor. If the states had offered that testimony for the truth of the matter asserted, it would have been hearsay. And these are... Yeah, but the line, I think, you know, it's a truism. Everyone is aware of the fact that Wilson v. Clark 703-704 is very close to illegal fiction because the attempt to separate the Cheshire cat from its smile by saying, you know, that the expert can give his opinion and the credibility of his opinion depends on his basis. And his basis depends on what is reasonable for that profession, what constitutes reasonable sources for that profession to rely on. And then we say, well, that may attach legitimacy to the opinion, but it's not evidence of the fact upon which the reliance is based. I frankly find it difficult to find that there is a prejudicial impact on the one versus the other because they're so close in the mind of a jury to start. Nevertheless, you have, you so the line is so tenuous that it becomes important to treat it as if that line is in fact meaningful, you know. But in terms of a jury's impression, whether it's something that the expert relies on as opposed to being something that constitutes an independently admitted event is very close to start with. So, you know, I start kind of feeling here that the overriding importance in this case is really the question of whether you could stipulate to omit the details as opposed to whether the jury is going to construe this as independently, as independent evidence versus simply a grist for the expert's mill, so to speak, subject to that cautionary instruction. But I think the more meaningful question, I think, is whether you could avoid the details of some horrific kind of event by stipulating to something of a lesser nature that satisfies the legal standard that has to be applied. Certainly, Your Honor, there's nothing in the statute that would prevent a stipulation there. All that is in evidence is their opinions. You don't have to disclose the underlying facts of an expert's opinion. And I think Your Honor pointed out the danger that we have here with the jury hearing this sort of testimony, but because they did hear it in this case, there was a need to pay special care in presenting it to them. Well, let me ask you this. Looking at the argument that was made by Mr. Kelly's counsel in closing, it's quoted, I think, on page 17 of the Respondent's Brief where it says, He had a history of offending that lasted from 1973 until 1977 and not the 39 years that Dr. Quackenbush would have you believe. He could have offended again while he was incarcerated or while he was on parole, but he was never charged or convicted of anything. With that attack on the conclusion of Dr. Quackenbush and his reliance on, implicitly, the reliance on this sole fact, the people basically say that when Respondent had been free on parole, he had reoffended or committed acts of sexual misconduct at every opportunity. To prove the point, they traced the Respondent's sexual misconduct while out on parole from 1977 until 2006. And had that been said as the doctors not only relied on the conviction from 1977, but they also relied and were entitled to rely, based upon their experience and in their profession, on the conviction of Dr. Quackenbush. If they had relied upon Dr. Quackenbush's confession on these other acts which they said they relied upon, would there be an argument? Your Honor, that would be a proper way to argue the testimony. To say this is what the experts relied upon, but that's not what they did. They said that this is what happened. Don't we have to review, though, the arguments in their entirety and determine the context in which they were made, so that when we look at what the defense attorney argued, these multiple comments, and one of them was specifically that the jury should not give weight to his testimony because the amount of time dedicated to actual criminal offenses involving sexual misconduct, assault, was a limited four-year span. So don't we have to look at the prosecutor's remarks in their entirety and determine whether the court abused its discretion in not overruling those objections when it appears they were a response to the comment to the jury, forget what Quackenbush said, there's only a four-year history. And then the state says that you should believe Dr. Quackenbush's testimony because this was a continuing saga. Your Honor, you phrased it correctly. They should have said you can believe what Dr. Quackenbush said, not because it is a continuous saga, but because he relied on certain documents. So it's in the absence of words that you're asking us to really say that's really not what they meant. They wanted the jury to consider this as substantive evidence when they were responding to the comment, don't believe him. There's no record here of any other assaults except a limited four-year time frame. But there was no evidence of any other convictions. No, there wasn't. But that's not what the experts based their opinion upon. As Justice Epstein has just pointed out, they reviewed this entire history. Certainly. And that what they based their opinion on could not be argued as a fact. And we're talking about a dangerous situation of facts here because juries have, these are highly prejudicial facts. We're talking about sexual misconduct. And a jury hearing those facts, there's a danger of misuse. But didn't the judge instruct both that the evidence regarding the other misconduct or the actual convictions was only to be considered in determining whether or not there should be weight given to the expert's opinion? And wasn't there also a further instruction to the jury? And they got that instruction multiple times. But they got it at the close of the evidence. And they also got the instruction that closing arguments are not evidence, did they? Yes. And, Your Honor, what's so problematic here is that when an objection was made during the argument... It was overruled. It was overruled. And not that the defendant had any burden at all, but was there any instance in which these other incidents were challenged during the cross-examination of the doctors who relied on them in terms of their reliability? Well, they were challenged as to, you know, the doctors speaking to the declarants personally. We do know that they did not do that. So that did occur. But by the time the rebuttal argument came, by the time they're arguing this as fact, there was no opportunity for the response. No, but there wasn't. Questions were given in the first instance. When they first questioned the expert, there were cautionary instructions. Yes, Your Honor. And there is also an opportunity, whenever one is questioning a doctor or any expert witness who places before the court the items on which he or she relies upon in forming the opinion, to question the reliability of the information upon which the doctor relies. Leaving aside the issue of whether those items would be sufficient to come up with the opinion, you can also question the existence or the reality or the correctness of what he or she is relying on. And that really wasn't done here, was it? You know, Your Honors, they were relying on the state's assertion that they would be using this evidence for the limited purpose of explaining the basis. But doesn't that also figure into whether there is an abuse of discretion and whether it's harmless beyond a reasonable doubt and things of that nature? The fact that there is really a meaningful contest as to the existence of these items, conceitedly not given through eyewitnesses, but only as Justice Gordon was talking about, through the basis of the Wilson and Clark Reliance. Isn't that also something that figures into the impact that these errors, if they were errors, could be said to have had on the jury? Where there is no meaningful contest as to the actual occurrences themselves, and where it's made clear by instructions repeatedly that they are not to be considered except for the proper Wilson and Clark considerations, that these really can't be said to have had an overwhelming impact on the jury deliberation. Particularly since the defendant would not object, from what I gather from your briefs, if the prosecutor, instead of arguing those past crimes, as such argued the basis, repeating those crimes, identifying it as a basis for the expert's decision. So those events would still get extended mention, but within the framework of being a basis as opposed to being independent proof. And it's really demanding a great deal of sophistication from the jury to say that that differential is prejudicial. Well, I think that's why we need to demand it of the states, that they're the ones who differentiate between us, that we make it clear to the jury what they are allowed to consider and what they are not allowed to consider. But our standard is still whether it's prejudicial. It's not designed. We're not, in that sense, I suppose, we don't have the extended prerogative of teaching a lesson with what we do. We have to determine whether it in fact made a difference in the outcome. We can say, state, you really shouldn't have created this issue, but then we still have to judge its impact. No harm, no foul. Well, I believe there would be foul here, and for sure certainly harm. And what we have is the jury left with an impression that what the prosecutor was arguing was a proper comment on the evidence. And the evidence here that was at issue was just the two opinions of the state's witnesses. And as the state admitted in their brief, those opinions needed to be resuscitated. So we are not in a situation where there was necessarily an overwhelming evidence against the respondent if those two opinions were not credible. Except the crimes for which they were convicted, that could be introduced independently. The first element. So the first element was stipulated, too. Yes, no doubt that was proven, and there was stipulation entered. But we're talking about the second two elements here, Your Honor, and that would be that whether the respondent had a mental disorder and whether that mental disorder made him substantially probable to re-offend. And all the evidence that we have in this case was the opinions of two experts. And if those opinions were not credible, then we don't have a situation of overwhelming evidence. And the jury being left with the impression that they could consider the underlying facts of the expert's opinion is harmful because the jury can then say. But you see, you talk about the impression because they never said that. They never said you can consider these facts independently as a basis for ruling this way. If anything, it was the absence of an express caveat that you were really complaining of here. Well, they argued that this is what happened. So they were arguing the testimony for the truth of the matter. Well, basically you're arguing that the defendant, so to speak, his hands are tied when he asserts his right not to testify and it's not subject to comment. So you're counting on the cautionary instruction standing in his place saying it's not necessarily true, something that he won't take the stand to say and can't be made to take the stand without shifting burdens of proof. So that's where it becomes important for that cautionary instruction to be a means of communicating to the jury, don't swallow it hook, line, and sinker. It may not be true, but that's not the purpose of the cautionary instruction. It's not there to help the defendant. In that sense, it's there to maintain simply the integrity of this relatively subtle distinction that Wilson v. Clark in 703 said would make. Certainly, Your Honor, it's necessary to do that. And had the objections that the respondent made in this case to the comments been sustained, we would have had curative instruction then to tell the jury that you cannot consider that as fact. But the court denied that. Presumably because the court was of the opinion that those arguments were a direct response to the suggestion that the weight of the witness Quackenbush shouldn't be considered. But correct me if I'm wrong. Wasn't the jury twice advised before or at least during the trial that the testimony of the experts and the information that they relied upon was specifically not to be considered by the jury as substantive evidence against Mr. Kelly? They were advised after the testimony was given. They weren't advised before? Not before the witnesses testified, after they had testified. But there was a big discussion about this. There was a motion in limine directed to this. This was probably the major issue to be resolved before trial, whether or not the jury was going to get this instruction. Yes, and the respondent did request that it be given before the testimony. It was only granted for after each witness testified and at the close of trial. But it was a modified IPI instruction that was crafted by Mr. Kelly's attorneys. It was ultimately accepted by the trial court. Yes, Your Honor, and all those instructions need to be modified because they're given with brackets. It's sort of a fill in the blank. So a modification would have to be made in order for them to be given. And the problem here, why these instructions alone aren't enough, is because the objection was overruled. We're in a situation that was very similar to what this court faced in People v. Murphy, where there was an improper argument made, and it was the same type of improper argument. We have evidence that was offered for its basis of opinion testimony. It's a little different in Murphy because there seemed to be a lot more emphasis on the independent weight of the mother's hearsay testimony, as opposed to simply the weight given here on the testimony initially, at least, to support the expert evaluation without getting the source of the hearsay in this case, without giving it the prominence that it got in the Murphy case. I think it did get prominence here, Your Honors. They were arguing these facts as proof that the respondent was sexually deviant. The state's attorney, in fact, said, that's sexually deviant. Those were her words. So this was given prominence for sure. But wasn't it also a distinction that in Murphy you had evidence that they were bringing in that was not even evidence that would be proper basis for an opinion under Wilson v. Clark? This court did find that there was an error in admitting the evidence in the first place. But that's not a huge distinction between that case and this case. There's no allegation by you that this information that was inartfully expressed was in itself inadmissible if it was done as simply Wilson v. Clark support. Yes, Your Honor. But with due respect, I don't think it's a meaningful distinction because the court did say- Well, it would have gotten in, one way or the other, these facts in this case. Yes. It was just improperly argued, you say. And in Murphy, it wouldn't have gotten in at all. Right. But the error, the court says specifically, even assuming that it was proper under Wilson v. Clark, it would have still been reversible error because of the flagrant improper argument. Because you cannot offer testimony for the limited purpose of explaining an expert's opinion, the basis of an expert's opinion, and then argue it as substantive evidence. And that is, Your Honors, what happened here. We have the states arguing what the respondent did. And that wasn't an issue. And because those things weren't at issue, they couldn't have been used as evidence against the respondent. Not properly. But we know from the Supreme Court in Reese-Samuelson that we cannot commit someone based on their past conducts. So we certainly can't commit them based on unsubstantiated allegations of past conducts. And, Your Honor, in this case, I don't think we can say- I know we can't say that the jury wasn't left with the impression that the state's argument was proper because those objections were overruled. And we can't say that they only considered the evidence in this case and that their verdict wasn't tainted by the improper argument. And we have, at the very least, the appearance of impropriety, that they were allowed- Do you think that if they had said that the doctor based his opinions on this, that the verdict would have been different? I'm sorry, Your Honor. I'm going to share it. Well, are you basically saying that had the prosecutor couched the phrasing with the simple caveat that the jury- You're saying that the absence of those words resulted in the verdict. Allowing the jury to consider those words as true. So to consider that these were things he did, that these are things that make him sexually dangerous because he did them, but they know he did them- That was never argued. What you're doing now is you're adding words. The prosecutor never, never suggested that. They did suggest that that was sexually deviant behavior. They argued in rebuttal that the believability of Quackenbush should be accepted because there is or there were other actions besides the convictions. I mean, it was a response. If you read it in its context, one could reasonably interpret it to be that it was a response to the defense closing. Ms. Lee, you have an argument where Kelly's lawyers say, in essence, don't believe the opinions of Quackenbush because he would have you believe that this was because of a 30-some year history and their last conviction was in 1977. I've been there. It's tough sometimes with these cases. And the response was, inartfully put, but wait a minute. He didn't just rely on this conviction from 77. He also, he should have said, relied upon these other things that nobody contested. And it's because the clause he also relied upon was not expressly stated that we're here. Certainly, Your Honor. The phrasing makes it improper. Okay, well. Arguing it for its substance. It doesn't make it prejudicial. That's the question. That's the factor that we're stressing. Right. And it does make it prejudicial. Well, it doesn't make it prejudicial in at least as readily as we would consider the Murphy testimony prejudicial, where the event itself could not be admissible under any aegis, whether it's to provide a basis for the expert testimony or provide an independent basis. But here, no one contested it as being a proper basis for the expert testimony. Therefore, we have to consider the mix of well-based expert testimony here from two experts, plus whatever additional evidence came in, including the evidence of the last crime for which he was convicted, plus the fact that there was an earlier cautionary instruction, which could have pointed the jury in the right direction, regardless of where the prosecutor failed to take it, as being overwhelming. So that the glitch involved, and I call it that with some not otherwise meaning to disparage it, but the failure to delineate the basis for the admissibility of those past crimes, sexually violent crimes, would not have made the difference. And that's where we have to focus. Where nobody is, I think, here of the opinion that the prosecutor should, that the objections to the prosecutor's closing should have been granted. But now that they weren't, where is the beef, so to speak? We would submit that the beef is in the fact that this was not. You're too young to know what that is. I do, it's at the Burger King commercial. There you go. But it would be the. Extra points for that. Our beef would be that the evidence here, the evidence at issue, was not overwhelming because it was the credibility that was at issue. And the credibility needed to be resuscitated. So we don't. Well, it's credibility, but keep in mind that it's not a credibility issue where you're weighing the credibility of one expert against another. These were the only experts. They were the only experts. So they're the only game in town. I'm good at the cliches. Yes, Your Honor. They were the only experts, but the jury still needed to come to a finding beyond a reasonable doubt. So if their credibility was at issue, if their credibility was doubted, then they couldn't come to a conclusion beyond reasonable doubts. So the respondent had no duty to put forth any evidence here. It needed to be based on those two experts' opinions. And because we can't say that the jury wasn't considering the underlying facts of those opinions, we can't know that their verdict was tainted. And I do see that my time is coming to an end. So if there are no other questions, Your Honors. Thank you very much, Ms. Lewis. Thank you. Mr. Iskowitz. Good afternoon again, Your Honors. Again, my name is David Iskowitz. I'm with the Illinois Attorney General's Office. On behalf of the appellee, the Court and my able opponent, Ms. Leib, have covered quite a bit of ground here as far as what I was going to be discussing with you this morning. I'd like to start with, however, the cardinal principle mentioned by the Court is that allegedly improper comments in closing must be reviewed within the context not only of the entire closing argument, but indeed of the trial itself. Here we have the closing argument by the Respondent's attorney very aggressively and properly going after, as it must, the credibility of the two states' expert witnesses, Dr. Clackenbush and Dr. Gaskell. As part of that overall attack on those experts' credibility, the Respondent's attorney made much hay with respect to the chronology of events that defined the Respondent's history of sexual offense beginning in 1973. And as our experts opine, continued through to 2006, some 33-year history. And on that basis, our experts opine that that 33-year history was a substantial and good basis upon which to arrive at a paraphilia diagnosis. Now, in its closing, the State, the Respondent's experts tried to pick that testimony apart. And it did so by indicating that the sexual offensive behavior exhibited by the Respondent only encompassed about a three- or four-year period in the 1970s, between 1973 and 1977. And then the prosecutors got sloppy. The prosecutors' rebuttal to the comments, Your Honor, could have been more artfully stated. You know, there's two ways to express it. I said sloppy. You said not as artfully stated as possible. It was not as artful as it could have been. However, your transformation of those remarks were artful. Yes. Thank you, Your Honor. Thank you, Your Justice. That's not to say, though, that the rebuttal standing alone in a vacuum, that I think about ten lines of rebuttal argument, is the entirety of the rebuttal argument. At the end of the rebuttal argument, which takes up about two-and-a-half pages, the prosecutor wrapped things up. And he maybe could have done a better job in this regard, too, but he wrapped things up on page 206 of the record when he said that, we're asking that you, the jury, weigh the credibility of the witnesses, how they testified, how they're consistent, and reach the right verdict in this case. And in this way, they attempted in some way to wrap up the entirety of their case, and in particular, the comments they made in their rebuttal argument in response to the respondent's attorney's suggestion that doctors get a Well, I don't think that evidence is any conscious acknowledgement that they made a sloppy presentation because they could have expressly said, if you took from what I said anything other than this was offered to support the opinions of these two witnesses, again, we probably wouldn't be standing here today. But they didn't say anything as express as that. They didn't say it expressly, but they did say and did end by saying this is essentially a credibility question for you to decide. Correct me if I'm wrong. The only time this comment about the 33-year, that the history ended 33 years ago, came about in the defense closing argument when he said, you shouldn't believe Dr. Quackenbush because the defendant had no real history after the 33 years. That's right. When Quackenbush had earlier testified about all these other events, and so did Gaskill. And Gaskill. But Gaskill was never interviewed the respondent. Actually, Judge, it wasn't just once they said this. They said it on three occasions in their closing argument. Okay. But it was related to the not believing. Yes, Judge. Not accepting. Don't believe these experts. So the response was to a particularized argument about how the sexual assault history was limited to a particular period in the context of Dr. Quackenbush's opinion and why it wasn't worthy of belief. That's correct, Your Honor. And with the inclusion of the clause that he would have you believe, there's at least implicit in that that he was not an expert but was indeed an advocate. Yes. Which always is a dangerous line for lawyers on both sides to beware of crossing because when you do that you're implying that someone is being less than truthful as opposed to someone having an opinion which is not borne out by the evidence. That's proof. And apart from the context of these remarks, which is all important, of course, we do have the multiple limiting instructions. The instructions were given on three different occasions. The oral instructions were given on three different occasions, once after Dr. Gaskell testified, once after Dr. Quackenbush testified at the close of the evidence and in writing. And these instructions properly instructed the jury and these instructions were agreed to by the parties, of course, that the testimony and the basis of the expert's diagnosis was not to be considered as substantive evidence but only to support their respective opinions on the paraphilia or whatever other diagnosis they arrived at and to make matters even, to make sure that nothing else went astray during the trial. The trial court, both orally and in a written instruction, told the jury that closing arguments do not constitute evidence and that it should not consider anything they hear during closing arguments as such. If there was error in this regard, therefore, these closing instructions and the conscientious instructions given throughout the trial cured any error, cured any potential for prejudice. And on that basis, unless there's any further questions from the court, we ask that the judgment be affirmed. Thank you. Thank you, Justice. Any rebuttal? Yes, Your Honor. Okay. Mr. Johnson. I just have two points. Gave you an easy one to start off with, huh? I'll take what I get. You can thank Mr. Coyne for that later, but go ahead. I just have two points in rebuttal. First, that this was error and it was error not just because the State didn't say that's what the experts relied on, although what is evident from the trial and from the motion for mistrial is that the State knew that it should have said those words. The State defended itself during the motion for mistrial by saying, I must have said that's what the experts relied on over and over and over, Judge. That record does not bear out that assertion. And furthermore, it's not just the absence of those words, but the fact that the State argued it as if it were true. That's what happened is what was argued. That's what happened in 2000. What do you base your, I'll call it an accusation, that the State knew that it was avoiding purposely, refusing to acknowledge the limited use of that evidence? I mean, your follow-up was that the State then said that we did do that. Wouldn't that point the other way? And I ask that because if there was willful violation by the prosecution, it may fall into another category and an inch on the requirement that it be prejudicial. Yes, sir. I understand what I meant to convey was that the prosecutor knew that it would have been proper argument only if she had said those words. I didn't mean to say that the prosecutor was trying to make up for the fact that she knew she didn't say them. So it's basically a cognitive dissonance argument. I certainly didn't intend to say that, and in my memory now, I didn't say it the way I'm being accused of saying it rather than trying to say that. You're not arguing that they purposefully made the argument that they did in the rebuttal? No, Your Honor. We're not saying that they purposefully did. Bad faith, in other words. You're not arguing bad faith. No, Your Honor, but they certainly did do it. They certainly argued it as if it were taken for the truth of the matter asserted, and it's not just inartful. It's improper, and we know that from People v. Murphy, and I believe the trial court also recognized this when he ruled that there was certainly a basis for the motion for mistrial, and that it was a close call. The fact that we now have the record before us to review in light of what was actually said, weighs in favor, I think, of finding error in this case. You know, what's interesting about your argument, Mr. Johnson, is that the judge, by saying that it was a close call, what it implies is that when he heard the argument and overruled the two objections, that he didn't take the meaning as overtly being arguing the substance of it, because he was fully well aware of what the line was between permissible argument and impermissible argument on a Wilson v. Clark set of facts. And we know that from the instructions that he gave, and if you jump ahead to his ruling on the motion for mistrial, we know that he was aware of it at that point, too. By overruling those two instructions in the course, or excuse me, the two objections in the course of the rebuttal, one can infer that he just didn't hear it the way you're now arguing. And that doesn't mean that it shouldn't have been, the objection shouldn't have been sustained, but it does allow one to infer that it wasn't so blatantly received by his ears that it was clearly arguing the substance of it rather than the use of it. Wouldn't you say? No, Your Honor. Well, we do allege that the trial court erred in that regard, but further, upon review of the record, whether the trial court misheard it and whether the State's attorney thought that she had said something differently, on reviewing the record, we can see that that's not what happened, that she did say that's what he did when he was let out of the controlled environment. But doesn't that lead one to some conclusions about the impact of the inartful statements? The impact was that the arguments conveyed to the jury that Mr. Kelly was a bad man who if you let him out he's going to do this kind of thing again. And the things that they based their opinion on, earlier you asked about the reliability of those statements and whether or not they were cross-examined on. Dr. Gaskell, on direct examination, testified that this was, as far as the 14-year-old volunteer, this was a statement that Mr. Kelly made to the volunteer who told the technician, who told the nurse, who told the parole agent, who told Mr. Gaskell through his report. This is tenuous reliability. At best, it depends on five or six different people's credibility, and that's where the prejudice comes in, Your Honor. That says to that witness, but not to Dr. Quackenbush. Well, Dr. Quackenbush would have gotten his from the same source. He would have gotten his information from the same source as Dr. Gaskell. I believe Dr. Gaskell conveyed it in such a manner that it didn't need to be cross-examined because the attenuation between the original statement and what was being relied on was already clear. There was no need for cross-examination. So with that, Your Honors, we're asking for a new trial. Thank you. Thank you very much. All right, I want to thank all the lawyers and the 7-Eleven licensee, Mr. Johnson, for a very fine presentation, and we'll take the matter under advisement and issue a ruling in due course. And thank you again for your patience today.